UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THERESA LYNN GUERRIERO,

    Plaintiff,

v.                                                                          Case No. 6:22-cv-233-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claims for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error when determining her residual functional capacity (RFC); and failed to provide an adequate rationale when determining the persuasiveness of the opinions of the State Agency consultant, the consultative examiner, and two treating specialists. As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.    *Background*

Plaintiff, who was born in 1967, claimed disability beginning February 14, 2020 (Tr. 59, 78). She was 52 years old on the alleged onset date (Tr. 92). Plaintiff

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

completed one year of college (Tr. 317). She has held various jobs for construction companies: office administrator, permit coordinator, purchasing, and scheduler (Tr. 317, 341). Plaintiff alleged disability due to fibromyalgia, depression, sciatica, lumbar disc disease, arthroscopy of lumbar facet, lumbar region muscle spasm, lumbar back pain with radiculopathy, anxiety, nausea and vomiting, and thoracic aortic aneurysm (Tr. 316).

Given her alleged disability, Plaintiff filed applications for DIB and SSI (Tr. 282-283). The Social Security Administration (SSA) denied Plaintiff's claim initially and upon reconsideration (Tr. 78-105, 108-163). Plaintiff then requested an administrative hearing (Tr. 217-218). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff testified (Tr. 54-77). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 25-53).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February 14, 2020, the application date (Tr. 30). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease (lumbar and cervical), thoracic aortic aneurism, hypertension, mild osteoarthritis of the knee, cyclic vomiting, syncope/ near syncope, and anxiety (Tr. 31). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 32).

The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) and §416.967(b) with the following restrictions:

> except she can frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance, kneel, crouch, and crawl; and occasionally stoop. She must avoid exposure to unprotected heights, moving mechanical parts, and operating heavy machinery. She can perform simple, routine, rote, or repetitive tasks; must avoid fast paced work or work with stringent production requirements; and can adapt to occasional workplace changes independently.

(Tr. 35). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 35).

The ALJ concluded, after hearing testimony from the VE, that Plaintiff's RFC would not allow Plaintiff to perform her past relevant work either as actually performed or as generally performed (Tr. 45). The ALJ found that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (Tr. 45). In determining whether a successful adjustment to other work could be made, the ALJ noted that Plaintiff's ability to perform all or substantially all of the requirements of light work had been impeded by additional

3

limitations (Tr. 45). With the assistance of the VE, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR § 404.1569, § 404.1569(a), § 416.969, and § 416.969(a)) (Tr. 45-46). Specifically, the ALJ found Plaintiff would be able to perform the requirements of representative occupations such as laundry sorter, which is light in exertional demand and unskilled in nature with a specific vocational preparation level of two (DOT 361.687-014) with 34,000 jobs in the national economy; delivery router, which is light in exertional demand and unskilled in nature with a specific vocational preparation level of two (DOT 222.587-038) with 35,000 jobs in the national economy; and band wrapper, which is light in exertional demand and unskilled in nature with a specific vocational preparation level of one, (DOT 920.687-026) with 12,000 jobs in the national economy (Tr. 46). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 46). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 14-19). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

  II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference

is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.    Discussion

Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to consider her fluctuating symptoms when determining her residual functional capacity (RFC) and by failing to provide an adequate rationale when determining the persuasiveness of opinions from State Agency Consultant Phillip Matar, M.D.; Donna Lester, M.D., the consultative examiner, and treating physicians, Gary Weiss, M.D. (neurologist) and Steven Karas, M.D. (cardiologist). These issues are intertwined, and I address them together below.

Citing to SSR 96-8p, Plaintiff states the RFC should reflect the most she can do "on a regular and continuing basis." She claims that the ALJ failed to consider the episodic nature of her impairments when she crafted the RFC. Under SSR 96-8p, the ALJ's RFC assessment must include "a narrative discussion describing how the evidence supports each conclusion" and "cit[e] specific material facts … and nonmedical evidence." SSR 96-8p, 61. Fed. Reg. at 34,478. Ruling 96-8p also requires the ALJ to "discuss the [claimant's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id*. Citing to record evidence that reflects her episodic vomiting and chronic intermittent pain, significant weight loss, syncope and near syncope, chronic weakness, fatigue, and dizzy spells, Plaintiff states her impairments prevent sustained standing or walking. Specifically, she points to the following record evidence documenting her impairments and symptoms: severe sciatica and back pain  (Tr. 1124, 1126, 2012-2013, 2069, 2111); history of taking epidural steroid injections for back symptoms (Tr. 1141); syncope or near syncope (Tr. 1124, 1252, 1258, 1534, 1522, 2012-2013, 2108, 2064); fatigue/weakness (Tr. 1252, 1534); need to lie down for pain relief and rest (Tr. 1496); peripheral neuropathy (Tr. 2116); loss of sensation to pin prick on left side (Tr. 2068); decreased range of motion in lumbar spine (Tr. 2069); and need for a disabled parking permit (Tr. 2118, 2104). *See* Doc. 20 at 26. She also cites to evidence from her treating neurologist Gary Weiss and her cardiologist Steven Karas who both opined, respectively, that due to her episodic conditions and/or treatment she would be absent from work three or more times and four or more times a month (Tr. 2136, 2142). While the Commissioner does

not dispute Plaintiff's episodic conditions, the Commissioner states that substantial evidence supports the ALJ's conclusion that Plaintiff can perform a reduced range of light work "on a regular and consistent basis."

As both parties acknowledge, pursuant to the regulations in place when Plaintiff submitted her application for benefits on February 27, 2020, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations

do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5), 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[2] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Upon first glance it may seem that the ALJ complied with this regulatory scheme as she addressed, albeit briefly, the persuasiveness of the medical source opinions. However, the regulations specify that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In this case, the ALJ concluded that the treating neurologist's and treating cardiologist's opinions were "not

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

persuasive" even though treatment records contain relevant objective evidence supporting the limitations they imposed on Plaintiff (Tr. 42-43).

Specifically, in considering Dr. Weiss's opinions, the ALJ stated: "Although Dr. Weiss is a neurology specialist, his treatment notes at 26F and 28F do not support his opined limitations" (Tr. 43). The ALJ discussed that Plaintiff's neurology exam was "largely unremarkable" despite her numerous subjective complaints; her gait and station were normal, her motor strength was normal, and her sensation was intact except for her left side (Tr. 43). While the ALJ stated that Dr. Weiss had seen Plaintiff only twice before forming his opinions, the administrative record includes Dr. Weiss's initial evaluation dated February 3, 2021, and treatment records dated February 23, 2021, March 15, 2021, and April 5, 2021. These records predate Dr. Weiss's Physical Restrictions Evaluation dated May 3, 2021 (Tr. 2055-2069, 2072-2080). Moreover, Dr. Weiss reviewed previous medical records and obtained and reviewed objective radiology and nerve studies before reaching his opinions (Tr. 2135, 2078-2080).

Dr. Weiss's diagnoses include chronic pain/illness syndrome, history of fibromyalgia, joint pain, history of nerve damage on a prior EMG, pathological reflexes on exam, neck pain, thoracic spine pain, and low back pain (Tr. 2063). His notes show Plaintiff had localized, intermittent cervical pain ranging from a 0-8 on a ten-point pain scale; experienced spasms and decreased range of motion; and had weakness that made it difficult to grasp/open things and caused her to drop items (Tr. 2066). She described her cervical pain as "burning and numbness in arms down to fingers … forearms feel like someone is giving her an Indian burn (Tr. 2066).

11

Similarly, Plaintiff described her thoracic and lumbar pain as "constant" with pain radiating around her chest, through her hips and buttocks, to her toes on her right side and her thigh on her left side (Tr. 2066). She reported burning, numbness, and weakness from legs to toes, occasional cold feeling (Tr. 2066). Dr. Weiss's records include objective evidence supporting Plaintiff's subjective complaints. In particular, a cervical MRI showed a "large HNP at C 5-6 and additional HNPs at C 6-7 > C 4-5" (Tr. 2057); a lumbar spine MRI showed small HNPs at L4-5 and L3-4 (Tr. 2076); and autonomic nerve test results indicated an important reduction suggesting possible early signs of peripheral neuropathy (Tr. 2076).

At her most recent appointment with Dr. Weiss on April 5, 2021, Plaintiff reported dizziness 3-5 times a week; chest pain and shortness of breath; cervical, thoracic, and lumbar pain (Tr. 2072-2073). Examination revealed spasms, joint tenderness, and reduced range of motion (Tr. 2076). The medical evidence also reflects she was uninsured and could not afford prescribed medical treatment (Tr. 2064). Although Dr. Weiss did not treat Plaintiff's other episodic condition, cyclic vomiting syndrome, his records document its existence (Tr. 2065). Dr. Weiss described Plaintiff's case as one of "high complexity" and opined that she was PTD (permanently totally disabled) (Tr. 2069, 2077).

Dr. Weiss opined that Plaintiff can sit for 15-30 minutes at a time and stand for 5-10 minutes at a time, and that in an 8- hour workday she should on average (in order to avoid aggravating her conditions) sit for 3 hours, stand/walk for 2 hours, and lie down for 3 hours (Tr. 2135). Dr. Weiss specifically stated Plaintiff would experience

good days and bad days, would be absent from work three or more times a month, that she cannot tolerate even low stress, and that there is no evidence of malingering or symptom exaggeration (Tr. 2136-2138).

The record evidence provides objective support for Dr. Weiss's opinions. Upon consideration, I find that this is a case where the ALJ has selectively cited evidence from the record and failed to consider Dr. Weiss's opinions in conjunction with his treatment notes (and other record evidence). *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (holding that the ALJ should have interpreted treating physicians' answers to questionnaires in light of their treatment notes, which fleshed out the physician's conclusions and supported the questionnaires); *Jimenez v. Kijakazi*, No. 1:20-cv-25178-KMM, 2022 WL 4794878, at *6 (S.D. Fla. Sept. 14, 2020) (finding ALJ selectively cited evidence from the record and failed to consider treating physician's letter in conjunction with his other progress notes). Considering all this, I find that the ALJ did not properly evaluate Dr. Weiss's opinion under the revised regulations and remand is warranted.[3]

---

[3] Interestingly, as Plaintiff points out, the ALJ found "persuasive" the state agency consultant Dr. Phillip Matar's opinion that Plaintiff "can perform light exertional work" even though Dr. Matar assessed Plaintiff's RFC at the initial disability determination level on May 28, 2020, did not examine Plaintiff, and reviewed only 11 of the 32 exhibits (Tr. 85-91). Dr. Matar opined that Plaintiff can occasionally lift and/or carry 20 pounds, can frequently lift and/or carry ten pounds, can stand and/or walk for a total of six hours in an 8-hour workday, can sit for a total of six hours in an 8-hour workday, and can push and/or pull for an unlimited amount of time (Tr. 87-88). Dr. Matar further opined that Plaintiff can climb ramps/ stairs frequently, can climb ladders/ scaffolds occasionally, balance frequently, stoop occasionally, kneel frequently, crouch frequently, and crawl frequently (Tr. 88).

The ALJ's analysis of Dr. Karas's opinion is equally problematic. The ALJ stated:

> On May 10, 2021, Dr. Karas, cardiologist, completed a medical source statement indicating the claimant could sit, stand, and walk for two hours in an eight-hour day. The claimant would require the ability to shift positions and would need unscheduled breaks during a workday. She could never lift 50 pounds and rarely lift 20 pounds or less. She could rarely twist and never stoop, crouch, or climb. She would need to avoid all exposure or even moderate exposure to all environmental elements. She would be off task 25 percent of a workday and would miss more than four days of work per month. This opinion, although offered by a specialist with a long treating history of the claimant, is not persuasive, as his treatment notes and the remainder of the record do not support the level of limitation opined. Dr. Karas references stress, anxiety and nausea and vomiting that contribute to her limitations. Dr. Karas did not discuss the cardiac related issues that limit the claimant's abilities but referenced dyspnea related to aortic valve stenosis. The record indicates Dr. Karas noted in August 2018 that the claimant "continues to do well" in September 2019, "Overall, she is doing well. She occasionally notes some mild dyspnea and tachycardia when climbing stairs but this is infrequent. She denies symptoms of chest pain or tightness. She denies symptoms of heart failure. She denies palpitations or tachycardia;" and as recently as November 2020, the claimant reported improvement with medication with only occasional feelings of orthostatic hypertension and Dr. Karas noted normal physical examination findings. The undersigned has provided limitations with regard to avoidance of heights and dangerous machinery; however, the remaining portions of the opinion are not persuasive, as they are not consistent with or supported by Dr. Karas' own treatment notes or the remainder of the record.

(Tr. 43) (citations to record omitted).

The record contains extensive cardiac treatment records from multiple providers, including Dr. Karas and Dr. Karas's nurse practitioner. Plaintiff had a mechanical aortic valve replacement in 2010; a CT revealed that her ascending thoracic aneurysm increased in size from 4.8cm to 5.3 cm; a ten-day continuous telemetry monitor revealed heart block occurred six times with "the most severe

second-degree type 1 [and] slowest 39 beats per minute;" and Plaintiff could not proceed with a recommended electrophysiologist study (estimated to cost $15,000) due to her lack of insurance (Tr. 2041-2043). As Plaintiff states, the ALJ focused on the Plaintiff's stability at her appointments and failed to analyze her underlying cardiac conditions that produce a range of symptoms and cause a range of limitations (consistently documented in the medical evidence, the medical opinions, third party report, and Plaintiff's own reports and testimony). And the ALJ failed to explain her conclusion that Dr. Karas's opinions were inconsistent with his own treatment notes. How the treatment records constitute inconsistencies, undermining Dr. Karas's medical opinions on Plaintiff severe and limiting impairments, is not obvious. Thus, I cannot conclude that the ALJ's analysis of the medical evidence and her determination of the persuasiveness of Dr. Karas's opinions are supported by substantial evidence. While it is impermissible for this Court to reweigh the evidence, the ALJ's decision must be supported by substantial evidence such that a reasonable person would accept it as adequate to support the ALJ's conclusion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Unfortunately, after reviewing the ALJ's decision, the record evidence, and the parties' memoranda, I cannot agree that the ALJ's disability determination is supported by substantial evidence.

     Because remand is appropriate for the reasons set forth above, the Court need not discuss Plaintiff's remaining arguments concerning the ALJ's evaluation of Drs. Lester and Matar's opinions.

*IV.   Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is reversed and remanded.

2. The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2022.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE